PEARN, Appellee and Cross–Appellant,

v.

DAIMLERCHRYSLER CORPORATION et al., Appellants and Cross–Appellees.

[Cite as *Pearn v. DaimlerChrysler Corp.*, 148 Ohio App.3d 228, 2002-Ohio-3197.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 20643, 20704 and 20707.

Decided June 26, 2002.

230

Dean A. Young, for appellee.

Michael P. Gilbride and Brian D. Sullivan, for appellants.

Michael Romanello, for appellants.

Ronald Towne, for appellant Rolling Acres Dodge, Inc.

---

CARR, Judge.

{¶ 1} Appellants Rolling Acres Dodge, Inc. ("Rolling Acres") and Daimler-Chrysler Corporation ("Chrysler") appeal from the judgment of the Summit County Court of Common Pleas. This court affirms.

## I

{¶ 2} This case begins with the purchase of a 1996 Chrysler Sebring Coupe by Donna Sawicki in Detroit, Michigan. Sawicki had numerous problems with the brakes on the Sebring. Chrysler repurchased the vehicle from Sawicki in September 1997 because it was a "lemon" within the meaning of Michigan's lemon law, due to repeated brake failures. The vehicle was then sent to the Detroit Auto Auction, where it was sold at a Chrysler-only auction. At a Chrysler-only auction, only Chrysler vehicles are sold and Chrysler officials oversee the auction.

The bill of sale for the Sebring indicated that the vehicle was not to be sold to an Ohio dealer. In spite of the notation, Rolling Acres purchased the Sebring at the auction. Rolling Acres then transported the Sebring to Ohio and sold it to the appellee, Angela Pearn ("Pearn").

{¶ 3} Pearn went to Rolling Acres in November 1997, intending to purchase a Dodge truck. When financing could not be obtained for the truck she wanted, Craig Theiss, a salesman at Rolling Acres, showed Pearn other vehicles, including the Sebring. Theiss told Pearn that the vehicle was a demo and that she would be its first owner. Theiss did not tell Pearn that the Sebring was a buyback, nor did he tell her that the vehicle had a special extended warranty from Chrysler because it was a buyback. Theiss had Pearn sign some preliminary paperwork, and then he took her to the finance department, where Dominick Macreno had her sign the remaining paperwork to complete the transaction.

{¶ 4} Pearn began having trouble with the brakes in the fall of 1998. After taking the Sebring in for several repairs on the brakes, Pearn decided to trade in the vehicle. On September 13, 1998, Pearn went to Falls Dodge to look at vehicles for which she could trade in the Sebring. When a salesman at Falls Dodge ran the Sebring's vehicle identification number through the computer, he discovered it was a buyback vehicle. Holmes, a manager at Falls Dodge, then informed Pearn that the vehicle was a buyback.

{¶ 5} Pearn then brought this action against Rolling Acres and Chrysler, alleging the following against each defendant: (1) violations of the Consumer Sales Practices Act, (2) breach of warranty, and (3) fraud. Pearn also sought punitive damages.

{¶ 6} The case was tried to a jury. At the close of Pearn's case, both Rolling Acres and Chrysler moved for directed verdict. The trial court denied both motions for directed verdict. The jury found (1) for Pearn against Rolling Acres for $6,900 for Consumer Sales Practices Act violations, (2) for Pearn against Rolling Acres in the amount of $2,000 for breach of warranty, (3) for Pearn against Rolling Acres for $13,000 for fraud and $75,000 for punitive damages, (4) for Pearn against Chrysler for $16,100 for Consumer Sales Practices Act violations, (5) for Chrysler for breach of warranty, and (6) for Pearn against Chrysler for $9,200 for fraud and $150,000 for punitive damages.

{¶ 7} On December 27, 2000, the trial court entered judgment based upon the jury's verdict but ruled that the matter was not final until a determination was made as to attorney fees awarded by the jury. On July 7, 2001, the trial court found that both Rolling Acres and Chrysler were liable for $224,250 in attorney fees and $876 in costs. The trial court further found that Rolling Acres was responsible for only twenty-five percent of the fees and costs.

{¶ 8} On June 21, 2001, Rolling Acres moved for a new trial and partial judgment notwithstanding the verdict on the issue of punitive damages. On July 6, 2001, Rolling Acres moved for relief from judgment based on newly discovered evidence and fraud. The trial court denied Rolling Acres' motion for new trial and partial judgment notwithstanding the verdict on July 16, 2001. On July 24, 2001, Rolling Acres requested a hearing on its previously filed motion for relief from judgment. The trial court denied both Rolling Acres' request for hearing and motion for relief from judgment on August 8, 2001.

{¶ 9} Both Rolling Acres and Chrysler timely appealed. This court will begin with Rolling Acres' assignments of error. Rolling Acres has set forth five assignments of error for review.

## II

### FIRST ASSIGNMENT OF ERROR

{¶ 10} "The trial court erred in admitting the testimony of appellee's expert, David Stivers[.]"

{¶ 11} Rolling Acres has argued that the trial court erred in admitting the testimony of Pearn's expert, David Stivers ("Stivers"). Specifically, Rolling Acres has argued that Stivers's testimony should have been excluded under either Evid.R. 403(A) or 702(A) or both.

{¶ 12} The decision of whether to admit evidence rests in the sound discretion of the court and will not be disturbed absent an abuse of that discretion. *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 436, 715 N.E.2d 546. An abuse of discretion signifies more than merely an error in judgment; instead, it involves "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.

{¶ 13} The purpose of expert testimony is to "assist the trier of fact in determining a fact issue or understanding the evidence." *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 611, 687 N.E.2d 735. According to Evid.R. 702(A), an expert witness's testimony must either "relat[e] to matters beyond the knowledge or experience possessed by the lay person or dispe[l] a misconception common among lay persons." An expert witness "may not express an opinion upon matters as to which the jury is capable of forming a competent conclusion." *Burens v. Indus. Comm.* (1955), 162 Ohio St. 549, 55 O.O. 436, 124 N.E.2d 724, paragraph two of the syllabus.

{¶ 14} Rolling Acres has argued that, even if Stivers's testimony was admissible as being relevant, it was highly prejudicial to Rolling Acres and was, therefore, inadmissible under Evid.R. 403(A). Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 15} Stivers testified that it is difficult for a car dealer to sell a buyback vehicle if it discloses to the consumer that it is a buyback vehicle. Stivers also testified that if a dealer finds a consumer that will purchase a vehicle after being told it is a buyback, the dealer will not be able to sell it for as much as if the consumer did not know it was a buyback. When questioned as to the value of a buyback vehicle with a history of serious brake problems that was not repairable after numerous attempts, Stivers stated that its value would be "essentially salvage value." Stivers testified that a dealer who chooses not to disclose the fact that a vehicle is a buyback can benefit by getting consumers to pay more for the vehicle than if they knew they were purchasing a buyback vehicle. Finally, Stivers revealed several tactics known as the "five-finger disclosure" used by car dealers to interfere with the consumer's ability to read the paperwork he or she is signing. With the exception of his testimony regarding the value of a buyback vehicle with a history of serious brake problems that were not repairable after numerous attempts, Stivers's testimony was not beyond the knowledge or experience of the jury.

{¶ 16} Assuming without deciding that portions of Stivers's testimony were inadmissible as being within the knowledge of the jury, this court finds that the error is harmless. There was sufficient evidence on which the jury could reach its verdict without Stivers's testimony. Accordingly, this court concludes that the any statements made by Stivers that were within the jury's knowledge were harmless as no prejudicial evidence was obtained thereby.

{¶ 17} Rolling Acres' first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

{¶ 18} "The trial court erred in denying appellant Rolling Acres' partial motion for judgment notwithstanding the verdict[.]"

{¶ 19} Rolling Acres has argued that the trial court should have granted its partial motion for judgment notwithstanding the verdict. This court disagrees.

{¶ 20} This court's standard of review on a motion for judgment notwithstanding the verdict, pursuant to Civ.R. 50(B), is de novo. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 257–258, 741 N.E.2d 155; *Reitz v. Akron Aerie No. 555 Fraternal Order of Eagles, Inc.* (Nov. 7, 2001), 9th Dist. No.

20454, 2001 WL 1379445. The evidence must be reviewed in a light most favorable to the nonmoving party and where there is substantial evidence to support that side of the case, upon which reasonable minds could reach different conclusions, the motion must be denied. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334.

{¶ 21} Rolling acres moved the trial court for partial judgment notwithstanding the verdict from the jury's award of punitive damages. Rolling Acres has argued that the evidence did not support an award of punitive damages. This court disagrees.

{¶ 22} R.C. 2315.21 governs the recovery of punitive and exemplary damages in tort actions. For a plaintiff to recover punitive damages in a tort action, the plaintiff must show by clear and convincing evidence that "[t]he actions or omissions of [the] defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate[.]" R.C. 2315.21(B)(1) and (C)(2). Actual malice for the purpose of awarding punitive damages is " '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.' " (Emphasis in original.) *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 473, 575 N.E.2d 416, quoting *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus.

{¶ 23} In this case, the actions of Rolling Acres demonstrate egregious fraud. Rolling Acres sold the Sebring to Pearn knowing that under R.C. 1345.76(B) it could not legally be sold in Ohio. Pearn was told that the vehicle was a demo and that she would be its first owner. Rolling Acres performed maintenance on the vehicle that was covered by Chrysler's supplemental buyback warranty and charged Pearn for the repairs.

{¶ 24} In viewing the evidence in the light most favorable to Pearn, this court finds that there was substantial evidence to support Pearn's side of the case, upon which reasonable minds could reach different conclusions. The jury believed Pearn. Rolling Acres' second assignment of error is overruled.

## THIRD ASSIGNMENT OF ERROR

{¶ 25} "The trial court erred in denying appellant Rolling Acres' motion for new trial[.]"

{¶ 26} In its third assignment of error, Rolling Acres has argued that the trial court erred when it denied its motion for new trial. This court disagrees.

{¶ 27} Civ.R. 59 also allows a trial court to grant a new trial based on the following grounds:

{¶ 28} "Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial[.]" Civ.R. 59(A)(1).

{¶ 29} The decision to deny a motion for a new trial will not be disturbed absent an abuse of discretion. *Brooks v. Wilson* (1994), 98 Ohio App.3d 301, 304, 648 N.E.2d 552. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 30} The trial court's refusal to allow counsel for Rolling Acres to withdraw is raised by Rolling Acres.

{¶ 31} Rolling Acres has argued that the trial court abused its discretion by refusing to allow the substitution of counsel. This court disagrees.

{¶ 32} Civ.R. 7(B) provides: "An application to the court for an order shall be by motion which, unless made during a hearing or a trial, shall be made in writing." A review of the record reveals that attorney Dickerson never filed a motion to withdraw as counsel for Rolling Acres. Appellant has stated in its brief that an oral motion to withdraw as counsel was made and denied by the trial court. However, such a proceeding is not documented in the record. It is the appellant's duty to ensure that all relevant portions of the record are filed with this court. App.R. 9(B). This court notes that attorney Ronald Towne filed a notice of appearance on behalf of Rolling Acres. However, this did not relieve attorney Dickerson of her responsibilities.

{¶ 33} Rolling Acres' argument with regard to the withdrawal of counsel is without merit.

## ROLLING ACRES' FINANCIAL INFORMATION SUBMITTED TO THE JURY

{¶ 34} Rolling Acres has argued that it was error for the trial court to provide the jury with the net income from Rolling Acres for 1999 and the net worth of Rolling Acres for 2000.

{¶ 35} This court notes that Rolling Acres has failed to set forth a single legal authority to support its contentions that the trial court erred. As such, Rolling Acres has failed to provide citations to authorities supporting its brief and the standard of review applicable to its assignments of error as required by App.R.

16(A)(7) and Loc.R. 7(A)(6). Rolling Acres had the burden of affirmatively demonstrating error on appeal. See *Angle v. W. Res. Mut. Ins. Co.* (Sept. 16, 1998), 9th Dist. No. 2729–M, 1998 WL 646548; *Frecska v. Frecska* (Oct. 1, 1997), 9th Dist. No. 96CA0086, 1997 WL 625488. Moreover, "[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out." *Cardone v. Cardone* (May 6, 1998), 9th Dist. Nos. 18349 and 18673, 1998 WL 224934.

{¶ 36} Accordingly, Rolling Acres' third assignment of error is overruled.

## FOURTH ASSIGNMENT OF ERROR

{¶ 37} "The trial court erred in denying appellant Rolling Acres' motion for relief from judgment[.]"

{¶ 38} Rolling Acres has argued that the trial court erred when it denied its Civ.R. 60(B) motion for relief from judgment. This court disagrees.

{¶ 39} An appellate court reviews a trial court's denial of a Civ.R. 60(B) motion for relief from judgment under an abuse-of-discretion standard. *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 174, 637 N.E.2d 914. An abuse of discretion is more than an error of judgment but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id. Because public policy favors finality of judgments, relief under Civ.R. 60(B) is limited. *Owiesny v. Owiesny* (Dec. 9, 1992), 9th Dist. No. 15616, 1992 WL 368521.

{¶ 40} To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate the following:

{¶ 41} "[T]he party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus.

{¶ 42} If any of these three requirements is not satisfied, the trial court should deny the motion. *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564.

{¶ 43} The Civ.R. 60(B) motion was based on newly discovered evidence allegedly not available at trial. Rolling Acres further alleged that Richard's affidavit proved fraud on the part of Pearn. See Civ.R. 60(B)(2) and (3).

{¶ 44} Civ.R. 60(B)(2) provides that relief from judgment may be granted for newly discovered evidence that by due diligence could not have been discovered in time to move for a new trial under Civ.R. 59(B). In order to prevail on a motion for relief from judgment based upon newly discovered evidence, the movant must show that the newly discovered evidence could not have been discovered by due diligence in time to move for a new trial. Civ.R. 60(B). This means that the movant has the burden of showing:

{¶ 45} " ' * * * (1) that the evidence was actually "newly discovered"; that is, it must have been discovered subsequent to the trial; (2) that the movant exercised due diligence; and (3) that the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result.' " (Citations omitted.) *Holden v. Ohio Bur. of Motor Vehicles* (1990), 67 Ohio App.3d 531, 540, 587 N.E.2d 880, quoting *Warner v. Transamerica Ins. Co.* (C.A.8, 1984), 739 F.2d 1347, 1353.

{¶ 46} Civ.R. 60(B)(3) provides that relief from judgment may be granted if the trial court finds fraud on the part of an adverse party. Rolling Acres argued that Richard's affidavit shows that Pearn committed fraud. Pearn argued that Richard's testimony demonstrated nothing more than contradictory statements.

{¶ 47} In denying Rolling Acres' motion for relief from judgment, the trial court found that (1) Rolling Acres failed to state what efforts it employed to find Richard, who had apparently lived at the same address in Akron for years and (2) Rolling Acres did not show that Richard's affidavit was not merely impeaching.

{¶ 48} Given the evidence before it, this decision by the trial court is not unreasonable or arbitrary. Thus, the trial court did not abuse its discretion.

{¶ 49} Rolling Acres' fourth assignment of error is overruled.

## FIFTH ASSIGNMENT OF ERROR

{¶ 50} "The trial court erred in denying appellant Rolling Acres' request for hearing on motion for relief from judgment[.]"

{¶ 51} Rolling Acres has argued that the trial court erred in denying its motion for relief from judgment without first conducting an evidentiary hearing. This court disagrees.

{¶ 52} Under Civ.R. 60(B), the movant is entitled to an evidentiary hearing only where the motion and attached affidavits contain allegations of operative facts that would warrant relief under Civ.R. 60(B). *Salem v. Salem*

(1988), 61 Ohio App.3d 243, 245, 572 N.E.2d 726. See, also, *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 103, 68 O.O.2d 251, 316 N.E.2d 469.

{¶ 53} In this case, the trial court had already determined that there was no basis for relief under Civ.R. 60(B). Since Rolling Acres did not present any operative facts that would warrant relief, the trial court did not err in denying an evidentiary hearing. Therefore, Rolling Acres' fifth assignment of error is overruled.

{¶ 54} Chrysler has set forth two assignments of error for review.

## III

### FIRST ASSIGNMENT OF ERROR

{¶ 55} "The trial court erred in its refusal to grant DaimlerChrysler a directed verdict on all of plaintiff's claims."

### SECOND ASSIGNMENT OF ERROR

{¶ 56} "The jury's finding of individual liability for fraud and violations of Ohio's Consumer Sales Practice[s] Act against DaimlerChrysler was not based on sufficient evidence."

{¶ 57} Chrysler's two assignments of error will be combined for discussion as they raise similar issues.

{¶ 58} In its first assignment of error, Chrysler has argued that the trial court erred in denying its motion for a directed verdict on all of Pearn's claims. Chrysler's second assignment of error is that the jury's finding of individual liability for fraud and violations of Ohio's Consumer Sales Practices Act against Chrysler was not based on sufficient evidence. This court disagrees.

{¶ 59} This court reviews a trial court's ruling on a motion for directed verdict de novo because it presents us with a question of law. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 257, 741 N.E.2d 155. A motion for directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119–120, 671 N.E.2d 252.

{¶ 60} Pursuant to Civ.R. 50(A)(4), a directed verdict is properly granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" Where there is substantial evidence upon which reasonable minds may reach different conclu-

sions, the motion must be denied. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334. However, when the party opposing the motion for directed verdict has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141.

{¶ 61} Chrysler's entire argument centers around whether there was an agency relationship between it and Rolling Acres. Chrysler has argued that R.C. 1345.76(A) creates an agency relationship and Rolling Acres was not its agent. Therefore, Chrysler has concluded that the trial court should have granted its motion for directed verdict.

{¶ 62} Pearn has argued that R.C. 1345.76(A) places a nondelegable duty upon Chrysler to disclose the buyback status of a vehicle to an Ohio consumer and, therefore, agency is irrelevant. In the alternative, Pearn has argued that if this court finds that the existence of an agency relationship was necessary in order to find Chrysler liable, the evidence supports the jury's finding of an agency relationship. This court is called upon to construe the duties of a manufacturer vis-à-vis a dealer under R.C. 1345.76(A), an issue of first impression in Ohio.

{¶ 63} "When called upon to construe a statute, we rely upon well-established rules of statutory construction to determine the legislative intent. To do so, we first look to the language of the statute and its purpose. We must give effect to the words used in the statute, not delete any words or insert words not used. In addition, R.C. 1.49 sets forth factors for statutory construction that include the object sought to be attained, the circumstances under which the statute was enacted, the common law, and the consequences of a particular construction." (Citations omitted.) *Lesnau v. Andate Ent., Inc.* (2001), 93 Ohio St.3d 467, 471, 756 N.E.2d 97.

{¶ 64} "It is a fundamental rule in construing a statute that all parts of it must be construed together and any apparent contradictions reconciled, if possible." *Blackwell v. Bowman* (1948), 150 Ohio St. 34, 43–44, 37 O.O. 323, 80 N.E.2d 493.

{¶ 65} The resale of a buyback vehicle is regulated by R.C. 1345.76, which states:

{¶ 66} "(A) A buyback may not be resold or leased in this state unless each of the following applies:

{¶ 67} "(1) The manufacturer provides the same express warranty that was provided to the original consumer, except that the term of the warranty shall be the greater of either of the following:

{¶ 68}  "(a) Twelve thousand miles or twelve months after the date of resale, whichever is earlier;

{¶ 69}  "(b) The remaining term of any manufacturer's original warranty.

{¶ 70}  "(2) The manufacturer provides to the consumer, either directly or through its agent or its authorized dealer, and prior to obtaining the signature of the consumer on any document, a written statement on a separate piece of paper, in ten-point type, all capital letters, in substantially the following form:

{¶ 71}  "WARNING: THIS VEHICLE PREVIOUSLY WAS SOLD AS NEW. IT WAS RETURNED TO THE MANUFACTURER OR ITS AGENT IN EXCHANGE FOR A REPLACEMENT VEHICLE OR REFUND AS A RESULT OF THE FOLLOWING DEFECT(S) OR CONDITION(S):

{¶ 72}  "1 ..............................................

{¶ 73}  "2 ..............................................

{¶ 74}  "3 ..............................................

{¶ 75}  "4 ..............................................

{¶ 76}  "5 ..............................................

{¶ 77}  "..........        ..............................................

{¶ 78}  "DATE          BUYER'S SIGNATURE

{¶ 79}  "The manufacturer shall list each defect or condition on a separate line of the written statement provided to the consumer.

{¶ 80}  "(B) Notwithstanding the provisions of division (A) of this section, if a new motor vehicle has been returned under the provisions of section 1345.72 of the Revised Code or a similar law of another state because of a nonconformity likely to cause death or serious bodily injury if the vehicle is driven, the motor vehicle may not be sold, leased, or operated in this state."

{¶ 81}  R.C. 1345.71(G) defines a "buyback" as "a motor vehicle that has been replaced or repurchased by a manufacturer as the result of a court judgment, a determination of an informal dispute settlement mechanism, or a settlement agreed to by a consumer regardless of whether it is in the context of a court, an informal dispute settlement mechanism, or otherwise, in this or any other state, in which the consumer has asserted that the motor vehicle does not conform to the warranty, has presented documentation to establish that a nonconformity exists pursuant to section 1345.72 or 1345.73 of the Revised Code, and has requested replacement or repurchase of the vehicle."

{¶ 82}  R.C. 1345.76(A) sets forth the conditions under which a buyback vehicle may be resold or leased in Ohio. R.C. 1345.76(A)(2) places the responsibility of disclosing the fact that a vehicle is a buyback upon the manufacturer.

However, the vehicle in this case contained defects that invoked R.C. 1345.76(B), which states: "Notwithstanding the provisions of division (A) of this section, * * * the motor vehicle may not be sold, leased, or operated in this state." The defects in the Sebring's braking system constituted a "nonconformity likely to cause death or serious bodily injury if the vehicle is driven." See R.C. 1345.76(B). Thus, whether an agency relationship existed between Chrysler and Rolling Acres is irrelevant.

{¶ 83} When read in pari materia, it is clear that it was the intent of the legislature that a vehicle containing the type of defect that was present in the Sebring in this case not be brought into Ohio. Given the language of R.C. 1345.76, this court finds that Chrysler had a nondelegable duty to ensure that a vehicle containing "a nonconformity likely to cause death or serious bodily injury if the vehicle is driven" was not sold in the state of Ohio. Chrysler's argument that it sold the Sebring in Michigan and, therefore, cannot be held liable for Rolling Acres' sale of the vehicle to Pearn is clearly not a correct interpretation of what the legislature intended. It is against public policy to hold that a car manufacturer can unload its buybacks that are likely to cause death or serious bodily injury on unwary Ohio consumers. Furthermore, car manufacturers cannot avoid accountability simply by first holding an auction in another state and selling the buyback to an Ohio dealer who then sells the dangerous buyback to the consumer.[1]

{¶ 84} Chrysler's two assignments of error are, therefore, overruled.

{¶ 85} The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

BATCHELDER, J., concurs.

SLABY, P.J., concurs in part and dissents in part.

SLABY, Presiding Judge, concurring in part and dissenting in part.

{¶ 86} While I concur in the balance of the majority opinion, I respectfully dissent from the majority's opinion regarding Chrysler's assignments of error one and two. The majority finds that Chrysler had a nondelegable duty to ensure that a vehicle, which contained "a nonconformity likely to cause death or serious

---

1. This court notes that the bill of sale from Chrysler to Rolling Acres contained the notation: "NO SALE TO OH * * * DEALERS." This is evidence that Chrysler was aware of Ohio law and understood R.C. 1345.76 to prohibit the sale of the Sebring to anyone in Ohio. In addition, a Chrysler employee testified that the vehicle should not have been sold to a consumer in Ohio.

bodily injury if the vehicle is driven[,]" was not sold in Ohio. The majority further stated that it violated R.C. 1345.76(B) and was contrary to public policy to permit Chrysler to sell these vehicles to unwary Ohio consumers. The majority places emphasis on the nonconformity of the vehicle; however, this case does not concern a products liability claim that would necessarily involve the manufacturer. Rather, this case focuses on a statutory notice requirement and the conditions under which a manufacturer is responsible for a failure to provide such notice. I find that an agency relationship must exist between the manufacturer and the dealer before a manufacturer is liable for a failure to provide notice under R.C. 1345.76(A). Because an agency relationship did not exist between Chrysler and Rolling Acres, I would sustain Chrysler's first and second assignments of error.

{¶ 87} Relying on R.C. 1345.76(B), the majority found that Chrysler's actions of selling the Sebring to Rolling Acres violated public policy. Specifically, the majority stated that Chrysler circumvented this provision by selling the vehicle in Michigan. Under R.C. 1345.76(B), the language states that a "motor vehicle may not be sold, leased, or operated in this state." Nevertheless, the language does not state that a motor vehicle may not be possessed. For all intents and purposes, Rolling Acres could have been purchasing the car for parts and not for resale. Therefore, Chrysler's action of selling the vehicle in Michigan did not violate public policy or circumvent R.C. 1345.76(B), as Chrysler would not know Rolling Acres' intended use of the vehicle. Furthermore, absent an agency relationship, Chrysler had no control over Rolling Acres' actions and, hence, was in no position to prevent the sale of the vehicle to appellee.

{¶ 88} R.C. 1345.76(A) regulates the resale of a buyback vehicle and addresses the notice requirement. However, an agency relationship must exist between a dealer and a manufacturer to impose liability on the manufacturer under this provision. Absent an agency relationship, manufacturers will be held accountable for violations of R.C. 1345.76(A) in tenuous situations. For example, if Chrysler were to sell a buyback vehicle in a state that permits this sale to a dealer, who, in turn, wholesales the car to a used car dealer, and the used car dealer sells the vehicle and the vehicle eventually enters Ohio and is later traded in for a Chevrolet, then, based upon the majority's finding, the individual who purchases the vehicle from the Chevrolet car lot can still file suit against Chrysler. The statute cannot be read to extend to such situations.

{¶ 89} Initially, it should be noted that the statutory language of R.C. 1345.76(A) does not create an agency relationship between a manufacturer and a dealer. Furthermore, "an automobile dealer or other similar type of dealer, who * * * merely buys goods from manufacturers or other suppliers for resale to the consuming public, is not his supplier's agent." *Bushendorf v. Freightliner Corp.*

(C.A. 7, 1993), 13 F.3d 1024, 1026 (involving a consumer's cause of action against manufacturer for a violation of lemon law). As such, Rolling Acres and Chrysler's relationship regarding used cars can be deemed an agency relationship if it satisfies the common-law definition.

{¶ 90} The Supreme Court of Ohio has held that "[t]he relationship of principal and agent * * * exists only when one party *exercises the right of control* over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks." (Emphasis added.) *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 24 OBR 403, 494 N.E.2d 1091, paragraph one of the syllabus. In the instant case, there is nothing to indicate that Chrysler exercised control over Rolling Acres with respect to used cars. Specifically, Ronald Sy, a custom relations specialist at Chrysler, stated that Chrysler had "no ruling over [Rolling Acres'] used car lot." As Chrysler did not exercise control over Rolling Acres' actions, an agency relationship did not exist.

{¶ 91} Additionally, the majority states in footnote one that Chrysler's bill of sale to Rolling Acres contained the notation: "NO SALE TO OH * * * DEALERS" and this notation indicates that Chrysler knew and understood R.C. 1345.76. Although this notation may indicate that Chrysler knew and understood R.C. 1345.76, there is no indication that this notation was included as a result of R.C. 1345.76. Rather, it was an internal policy of Chrysler to prohibit sales to Ohio dealers. As such, the sale of the Sebring to Rolling Acres may have been a violation of Chrysler's internal policy, which does not create a statutory or common-law duty on the part of the manufacturer, namely Chrysler. See *United States v. Caceres* (1979), 440 U.S. 741, 749–750, 99 S.Ct. 1465, 59 L.Ed.2d 733 (stating that an IRS agent's violation of an internal policy did not violate a statutory duty); *Williams v. United States* (Oct. 15, 1999), W.D.N.C. No. 2:99CV17–T, 1999 WL 33320440 (finding no basis to support a common-law claim based upon a violation of an internal policy). Therefore, assuming that Chrysler violated its own internal policy, this violation does not rise to the level of an infraction of R.C. 1345.76.

{¶ 92} For the foregoing reasons, I would reverse the judgment of the lower court as it relates to Chrysler.