OPINION
{¶ 1} Defendant-appellant, Eaton Corporation, appeals from a Mahoning County Common Pleas Court judgment, following a jury trial, finding that plaintiffappellee, Edith Dellick, is entitled to participate in the Workers' Compensation Fund.
 {¶ 2} Appellee began working at Republic Rubber in 1946. During her employment, Republic Rubber became known as Aeroquip and then as Eaton Corporation. She left appellant's employ in 1978. During her employment, appellee worked as a trimmer, a coiler, a tonnage clerk, and in the office.
 {¶ 3} Appellee sought participation in the Workers' Compensation Fund alleging she developed asbestosis due to asbestos exposure while working at appellant's plant. The Industrial Commission denied her participation. She then appealed to the trial court from the Industrial Commission's decision.
 {¶ 4} The case proceeded to a jury trial on October 20, 2003. The jury returned a verdict in appellee's favor. Appellant filed a timely notice of appeal on December 18, 2003.
 {¶ 5} Appellant raises five assignments of error, the first of which states:
 {¶ 6} "The trial court erred in allowing the plaintiff to be called as her own witness on rebuttal to `clarify' her testimony from her case-in-chief."
 {¶ 7} Appellant argues that the trial court should not have permitted appellee to enter rebuttal testimony after it presented its case-in-chief. It alleges that appellee held back some of her evidence to use on rebuttal. Furthermore, appellant contends that appellee's testimony as to certain newspaper articles was hearsay and, thus, inadmissible.
 {¶ 8} The proper scope of rebuttal testimony lies within the trial court's sound discretion. In re Sadiku (2000), 139 Ohio App.3d 263,267, 743 N.E.2d 507. Thus, we will not reverse the trial court's decision absent an abuse of that discretion. An abuse of discretion occurs when a court renders a decision that is arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 9} A party has an unconditional right to present rebuttal testimony on matters that are first addressed in an opponent's case-in-chief. Phungv. Waste Mgt., Inc. (1994), 71 Ohio St.3d 408, 410, 644 N.E.2d 286. Matters that the plaintiff bears the burden of proving are properly presented in her case-in-chief. Id. In a workers' compensation case alleging that the plaintiff developed asbestosis, the plaintiff bears the burden of proving that she contracted the disease in the course of her employment. R.C. 4123.68.
 {¶ 10} So appellee had the burden of proving two things: (1) she developed asbestosis and (2) she contracted the disease during her employment with appellant. Appellee should have introduced evidence proving these two elements in her casein-chief.
 {¶ 11} During her case-in-chief, appellee presented testimony from two doctors and herself to establish that she acquired asbestosis as a result of her employment with appellant. During direct examination, appellee's counsel questioned her about a Youngstown Vindicator article she had read. Appellee testified that she read an article about a Republic/Aeroquip building that she worked in being condemned and demolished because of asbestos. (Tr. 332). On cross-examination, appellant also questioned appellee about what she read in the Vindicator. (Tr. 348-49). Appellant's counsel asked appellee if she had a copy of the article with her, to which she responded "no." (Tr. 349).
 {¶ 12} Appellant then presented testimony from two doctors who opined that appellee did not have asbestosis. The next day, after appellant rested it case, appellee's counsel called appellee back to the stand to testify on rebuttal. According to appellee's counsel, appellee went home after the first day of trial and found the Vindicator article about which she testified, and two others. (Tr. 505-506). Counsel wished to call appellee on rebuttal to testify as to the existence of the articles. (Tr. 514). Appellant objected. (Tr. 512-14, 518). The court overruled appellant's objection and allowed appellee to testify. It stated that appellee was limited, however, to testifying on the limited issue of the existence of the articles. (Tr. 514). She was not permitted to use the articles to prove that there was asbestos in appellant's plant. (Tr. 514-15).
 {¶ 13} Appellee's counsel then called appellee to the stand. She testified that one of the ways she became aware that the plant she worked in had asbestos in it was from several Vindicator articles she read. (Tr. 521). Counsel then handed her the three articles, which appellee identified. (Tr. 522-28). Appellee stated that the topic of each of the articles was asbestos cleanup at appellant's plant. (Tr. 523-28). The court did not admit the articles into evidence.
 {¶ 14} During appellee's testimony, the court gave a limiting instruction to the jury explaining to them, "this testimony is not being allowed to prove the existence of asbestos in the place where Mrs. Dellick worked but merely to prove the existence of the article because of yesterday's questioning and the issue of whether that article-those article or articles existed. That's all." (Tr. 525). At the conclusion of appellee's testimony, the court again instructed the jury, "I have permitted this evidence to come in only because of the cross examination of Mrs. Dellick which questioned, as I recall, not the contents but the existence of the articles that she referred to and are the articles that have been referred to here on rebuttal evidence." (Tr. 532).
 {¶ 15} Appellee testified regarding the articles to give some background information about how she became aware that she may have been exposed to asbestos. She did not use the articles to prove that she acquired asbestosis while she was employed by appellant. And the trial court, while allowing appellee to testify as to the articles' existence and general topics, did not permit her to read the articles to the jury, go into detail about their content, or admit them into evidence. It was within the trial court's broad discretion to determine what evidence was admissible as proper rebuttal. State v. McNeill (1998), 83 Ohio St.3d 438,446, 700 N.E.2d 596, citing N.W. Graham Co. v. W.H. Davis Co.
(1854), 4 Ohio St. 362, 381. The trial court did not act arbitrarily, unreasonably, or unconscionably in allowing appellee to testify as to the articles' existence.
 {¶ 16} Furthermore, the reason appellee wished to testify about the articles on rebuttal was because appellant questioned her during cross examination about whether she had the article with her, calling into question whether any article existed. The trial court acted within its discretion in allowing appellee to present rebuttal testimony the next day after she located the articles.
 {¶ 17} Accordingly, appellant's first assignment of error is without merit.
 {¶ 18} As appellant's second assignment of error raises the question of whether appellee's testimony regarding the newspaper articles was hearsay, we will address it there.
 {¶ 19} Appellant's second assignment of error states:
 {¶ 20} "The trial court erred in allowing the plaintiff to introduce, testify to, and read from newspaper articles as rebuttal testimony."
 {¶ 21} Here appellant argues that the court should not have allowed appellee to testify about what she read in newspaper articles, as such testimony was hearsay. It notes that newspaper articles are not admissible as evidence of the facts reported therein. Citing, Heyman v.City of Bellevue (1951), 91 Ohio App. 321, 108 N.E.2d 161. Furthermore, appellant contends appellee never laid a foundation for her testimony about the articles. Finally, it asserts that because the jury asked to see the articles, this demonstrates that the jurors relied on appellee's testimony about the articles.
 {¶ 22} The decision to admit or exclude evidence rests in the trial court's sound discretion and we will not reverse its decision absent an abuse of that discretion. Wightman v. Consolidated Rail Corp. (1999),86 Ohio St.3d 431, 437, 715 N.E.2d 546.
 {¶ 23} Appellant failed to object to appellee's testimony about the Vindicator during her case-in-chief. (Tr. 332). Additionally, appellant then questioned her on cross-examination regarding what she read. (Tr. 348-49). Thus, appellant waived any objection during appellant's case-in-chief.
 {¶ 24} But during appellee's rebuttal testimony, appellant objected repeatedly to her testimony regarding the Vindicator articles. (Tr. 522-30). Appellant's main objection was that the content of the articles was hearsay and that the court could not admit the articles to prove the facts they contained.
 {¶ 25} Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. Evid.R. 801(C). A "statement" includes written publications such as newspaper articles. Sykes v. General MotorsCorp., 11th Dist. No. 2003-T-0007, 2003-Ohio-7217. Generally, hearsay is inadmissible. Evid.R. 802. Thus, the newspaper articles were inadmissible to prove the truth of the matter asserted, which was that appellant's plant was demolished due to asbestos problems.
 {¶ 26} But appellee could still use the articles for another purpose. Here, appellee wanted to use the newspaper articles merely to demonstrate their existence. As noted above, during appellant's cross examination of appellee, it questioned appellee about whether she had a copy of the article. (Tr. 349). At the time, she did not. (Tr. 349). Thus, on rebuttal, appellee used the articles not to prove the truth of the matter asserted in them, but to prove that they did in fact exist. Appellee only testified as to the dates and the general topics of the articles. She did not read the articles to the jury nor did she go into detail about their contents. Additionally, the court did not admit the articles into evidence. And as mentioned earlier, the trial court gave the jury a limiting instruction on the purpose of the articles being sure to instruct the jury that the testimony was not to prove the existence of asbestos in the plant, but to prove the existence of the articles. (Tr. 525). A jury is presumed to follow the court's instructions. Pang v.Minch (1990), 53 Ohio St.3d 186, 195, 559 N.E.2d 1313. Thus, we will presume that the jury only considered appellee's testimony about the articles to prove their existence, not their contents. And while the jury did submit a question to the court asking to see the articles, the court denied their request. So the jury never read the articles, nor did appellee or anyone else read them to the jury.
 {¶ 27} Since the trial court limited the scope of appellee's testimony about the articles and did not admit them into evidence or permit the jury to read them and since appellee's purpose in testifying about them was to prove their existence, the court did not abuse its discretion in allowing appellee to testify about them. Accordingly, appellant's second assignment of error is without merit.
 {¶ 28} Appellant's third assignment of error states:
 {¶ 29} "The trial court erred to the prejudice of defendant in permitting testimony regarding evidence that was not produced during discovery."
 {¶ 30} While appellant listed this as an assignment of error, it failed to support this alleged error with any argument in its brief. Only in its reply brief, after appellee argued that we should disregard this assignment of error, does appellant support this assignment of error with an argument. There it argues that the trial court should not have allowed appellee to testify about the newspaper articles because appellee did not disclose them during discovery and did not mention them in her deposition.
 {¶ 31} Since appellant failed to make an argument in its brief to support this assignment of error, we can disregard it. An appellant's brief shall include an argument containing the contentions of the appellant with respect to each assignment of error and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which the appellant relies. App.R. 16(A)(7). This court has noted that an assignment of error may be overruled if the appellant fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment of error separately in the brief as required by App.R. 16(A)(7). CustomizedSolutions, Inc. v. Yurchyk Davis, CPA's, Inc., 7th Dist. No. 03-MA-38, 2003-Ohio-4881, at ¶ 12, citing App.R. 12(A)(2).
 {¶ 32} Even if we considered the merits of this assignment of error, the outcome would remain the same. A trial court has broad discretion in discovery matters, and we will not reverse the trial court absent an abuse of that discretion. Haslam v. Russell, 7th Dist. No. 03-MO-3, 2003-Ohio-6724. The trial court did not abuse its discretion in allowing appellee to testify as to the Vindicator articles' existence. Appellant did not object to appellee's testimony regarding an article during her case-in-chief. (Tr. 332). In fact, appellant asked appellee if she had a copy with her. (Tr. 349). Had she produced the article then, appellant could not have objected. So it is reasonable that the trial court would permit appellee to testify regarding the articles' existence on rebuttal. Accordingly, appellant's third assignment of error is without merit.
 {¶ 33} Appellant's fourth and fifth assignments of error share a common basis in law and fact. Therefore, we will address them together. They state:
 {¶ 34} "The trial court erred in denying the defendant's motions for directed verdict."
 {¶ 35} "The trial court erred in overruling the defendant's motion for judgment notwithstanding the verdict as against the manifest weight of the evidence[.]"
 {¶ 36} Appellant contends that appellee did not demonstrate that she was exposed to asbestos while working at its plant. It notes that appellee worked for several different employers. Appellant also points to appellee's testimony that she learned she had been exposed to asbestos when her attorney told her. Furthermore, appellant argues that the trial court chastised and corrected its counsel in the jury's presence and improperly overruled its objections, thus demonstrating the court's prejudice against it. It contends that this led the jury to reach a verdict that was against the manifest weight of the evidence.
 {¶ 37} An appellate court reviews a trial court's ruling on a motion for directed verdict de novo because it presents a question of law. Pearnv. Daimler Chrysler Corp. (2002), 148 Ohio App.3d 228, 240,772 N.E.2d 712. A motion for directed verdict tests the sufficiency of the evidence at trial, not the weight of such evidence or the credibility of witnesses. Id. The court shall grant a motion for a directed verdict when, "after construing the evidence most strongly in favor of the party against whom the motion is directed, [it] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). And like a motion for a directed verdict, a motion for JNOV tests the legal sufficiency of the evidence and, therefore, presents a question of law that is reviewed de novo. Julian v. Creekside HealthCenter, 7th Dist. No. 03-MA-21, 2004-Ohio-3197, at ¶ 8.
 {¶ 38} Asbestosis is "a disease caused by inhalation or ingestion of asbestos, demonstrated by x-ray examination, biopsy, autopsy, or other objective medical or clinical tests." R.C. 4123.68(AA). It is an occupational disease and is compensable as such when contracted by an employee in the course of the employment in which the employee was engaged. R.C. 4123.68. Thus, we must determine whether appellant produced sufficient evidence at trial so that reasonable minds could conclude that she developed asbestosis in the course of her employment with appellant.
 {¶ 39} Appellee presented three witnesses — Dr. Paul Venizelos, Dr. Alvin Schonfeld, and herself.
 {¶ 40} Dr. Venizelos is a lung specialist and certified B-reader, which qualifies him to read lung x-rays of people who have been exposed to occupational dust, like asbestos. (Tr. 191-93). He examined appellee's chest x-rays and did a B-read on them. (Tr. 204). Dr. Venizelos testified that the x-rays revealed small, irregular opacities in both lower lung zones. (Tr. 206). He stated that the opacities correlated to the finding that is seen with asbestosis. (Tr. 207). Counsel then asked Dr. Venizelos to assume the following: that appellee worked for Republic Rubber/Eaton from 1946 to 1978; that she was exposed to various asbestos-containing products; that the area she worked in was dusty and dirty; and that she breathed in some asbestos. (Tr. 208). Given these assumptions along with his examination of appellee's x-rays, Dr. Venizelos opined that appellee had asbestosis. (Tr. 209). He also opined, based on his examination and counsel's assumptions, that appellee developed asbestosis as a result of her exposure to asbestos dust while working at appellant's plant. (Tr. 209).
 {¶ 41} Next, Dr. Schonfeld testified. Dr. Schonfeld is a physician who specializes in lung disease and is also a certified B-reader. (Tr. 238, 243). In performing a B-read of appellee's lung x-ray, he found wavy lines in the lower lung zones. (Tr. 265). He testified that these wavy lines were consistent with asbestosis. (Tr. 265-66). He stated that the wavy lines represented scar tissue caused by the asbestos fibers. (Tr. 266). Dr. Schonfeld opined that appellee's x-ray was consistent with a diagnosis of asbestosis. (Tr. 267).
 {¶ 42} Dr. Schonfeld also examined appellee twice and testified regarding the examinations. He stated that appellee filled out a medical questionnaire. On the questionnaire, appellee indicated that she worked at Republic Rubber/Eaton from 1946 to 1978. (Tr. 272). Dr. Schonfeld stated that he questioned appellee about her employment. She informed him of her various positions and told him of asbestos in her work space and also that others were doing asbestos repairs nearby on such things as the pipes. (Tr. 272; Plaintiff's Exh. 6). Dr. Schonfeld further stated that appellee had a normal physical exam and breathing test, which was not unusual in most asbestosis cases. (Tr. 273-74).
 {¶ 43} Dr. Schonfeld stated that there are three requirements for a diagnosis of asbestosis: (1) a reliable history of exposure to asbestos; (2) a latency period of at least 15 to 20 years; and (3) chest x-rays that show abnormalities that look like asbestosis. (Tr. 256). He also stated there can be other supportive findings such as crackles in the lungs, abnormalities to the nail beds, and edema. (Tr. 257-58). Dr. Schonfeld testified that appellee met the latency requirement because she began working for appellant in 1946 and the x-ray was done 50 years later. (Tr. 274). Therefore, he concluded appellee met the minimum latency period of 15 to 20 years. (Tr. 274). He further concluded that, based on his conversations with appellee and her medical history questionnaire, she had an adequate exposure history to asbestos at appellant's plant. (Tr. 275). And Dr. Schonfeld reconfirmed that appellee had an abnormal chest x-ray. (Tr. 275). These factors led Dr. Schonfeld to conclude appellee developed asbestosis as a result of her employment at appellant's plant. (Tr. 275).
 {¶ 44} Finally, appellee testified. First, she gave her job history. After graduating high school, appellee worked at South Side Hospital operating the elevator and feeding patients. (Tr. 322). Then she worked at Sheet Tube as a roll turner for two-and-one-half years. (Tr. 322). After leaving Sheet Tube, appellee worked for Republic Rubber until her retirement in 1978. (Tr. 322). She stated that sometime in the 1960s, Republic Rubber became known as Aeroquip and then as Eaton Corporation. (Tr. 323).
 {¶ 45} During her time at Republic Rubber, appellee worked as a trimmer, a coiler, a tonnage clerk, and in the office. (Tr. 323-25). Most of appellee's time during her years at Republic Rubber was spent out on the floor; she only worked in the office during the last few years of her employment. (Tr. 326). Appellee testified that she generally worked eight hour days, full time. (Tr. 331).
 {¶ 46} Appellee testified that she believed she was exposed to asbestos during her years at Republic Rubber. (Tr. 327). She testified that there was asbestos on the presses, on the hoses, and up in the ceiling. (Tr. 327). She stated that sometimes the presses went bad and she had to cut them with saws. (Tr. 327). This exposed a white dusty material that she later found out was asbestos. (Tr. 328). She stated that the white dust would get up in the air, on her clothes, in her face, and that she breathed it in. (Tr. 328-29). Appellee also testified that sometimes she had to cut pipe covering from pipes on the floor and in the ceiling that revealed a white material. (Tr. 329). She stated that when the pipes in the ceiling were damaged, the white material would come down all over the place. (Tr. 330).
 {¶ 47} Next, appellee testified regarding events that occurred after she retired. She stated that she read a Youngstown Vindicator article about the building she had worked in being torn down because of asbestos. (Tr. 332). Appellee testified that she and her family members, who had also worked at Republic Rubber, went to a union hall in Warren to get chest x-rays. (Tr. 332-34). As a result, appellee learned she might have asbestosis. (Tr. 334). She then saw her family doctor who sent her for more x-rays and she saw Dr. Schonfeld two or three times. (Tr. 335-36). Appellee stated that she told Dr. Schonfeld where she had worked and that she was exposed to asbestos. (Tr. 337-38). She further stated that Dr. Schonfeld diagnosed her with asbestosis. (Tr. 338, 340).
 {¶ 48} On cross-examination, appellee admitted that she had no documentation that she was exposed to asbestos. (Tr. 347). She stated that she found out from the union that she should go for the chest x-ray at the union hall. (Tr. 354). She also admitted she indicated on a medical questionnaire that she worked at Southside Hospital, where she may have been exposed to dust from pipes, and at Sheet Tube, where she was exposed to insulation. (Tr. 359-61).
 {¶ 49} Next, appellant presented two witnesses, Dr. Digvijay Singh and Dr. David Rosenberg.
 {¶ 50} Dr. Singh is a pulmonary and critical care specialist; however, he is not a certified B-reader. (Tr. 385, 415). At the request of the Bureau of Workers' Compensation, Dr. Singh examined appellee. (Tr. 390). He stated that when appellee provided him with her occupational history, she did not mention that she worked with asbestos. (Tr. 392). According to Dr. Singh, appellee told him that she worked at Sheet Tube for 32 months and that it was dusty there. (Tr. 392). Upon conducting a physical examination, examining her x-rays, and considering her history, Dr, Singh did not feel that there was definite evidence that appellee had asbestosis. (Tr. 401-402).
 {¶ 51} Dr. Rosenberg, a physician specializing in pulmonary medicine and occupational medicine and a certified B-reader, testified next. He examined appellee's x-rays and concluded that they did not show evidence of asbestosis. (Tr. 444, 452-53). He also examined her lung capacity and performed some diagnostic tests. (Tr. 450). Dr. Rosenberg concluded that appellee had no findings of asbestosis. (Tr. 450, 460-61). He based this opinion on finding such things as she had no interstitial fibrosis, her lung size was normal, and she had no crackling when she took deep breaths. (Tr. 450-51). Dr. Rosenberg also had a high resolution CAT scan taken of appellee's lungs. (Tr. 458). He stated that the CAT scan revealed no evidence of asbestosis. (Tr. 459).
 {¶ 52} Given this evidence, a reasonable juror could conclude that appellee developed asbestosis as a result of her employment with appellant. The question of whether appellee has asbestosis could reasonably be resolved either way. The parties put on a "battle of the doctors." Two doctors concluded that appellee had the condition while two concluded she did not. Which doctors to believe was up to the jury to decide. As to whether appellee developed the condition as a result of her employment with appellant, there was sufficient evidence to support this finding. While appellant tried to suggest that appellee may have been exposed to asbestos during her employment at Sheet Tube, appellee testified that she only worked there for approximately 32 months. However, she worked at Republic Rubber/Eaton for 32 years. And she testified that asbestos repair took place at Republic Rubber/Eaton while she worked there and that she breathed in white dust from pipes and insulation. Thus, sufficient evidence exists on the record to support the trial court's denial of appellant's directed verdict motion and JNOV motion, especially when construing the evidence in appellee's favor, which we are required to do.
 {¶ 53} Appellant next argues that the jury's verdict was against the manifest weight of the evidence.
 {¶ 54} A judgment supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. Willett v. Felger (Mar. 29, 1999), 7th Dist. No. 96-CP-40; Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226, 638 N.E.2d 533. Furthermore, in considering whether a judgment is against the manifest weight of the evidence, it is important that this court be guided by the presumption that the findings of the trier of fact are correct. Seasons Coal Co., Inc. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. If the evidence is susceptible to more than one interpretation, we must construe the evidence consistently with the trial court's judgment. Gerijo,70 Ohio St.3d at 226.
 {¶ 55} As discussed above, the evidence was susceptible to more than one interpretation. The parties put on competing experts with opposite opinions. Furthermore, appellee testified that she was exposed to asbestos while working at appellant's plant. And appellant presented no evidence to the contrary. Given the evidence set out above and the presumption that the jury's findings of fact are correct, we cannot conclude that the jury's verdict was against the manifest weight of the evidence.
 {¶ 56} Accordingly, appellant's fourth and fifth assignments of error are without merit.
 {¶ 57} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs., Waite, P.J., concurs.