OPINION
{¶ 1} Appellants Dennis and Teresa Haslam brought a personal injury action against Appellee Theresa Russell arising out of an automobile accident. The jury rendered a unanimous verdict in Appellee's favor. Appellants filed post-trial motions, which were overruled. Appellants argue that the evidence does not support the jury verdict, that there was juror misconduct, that the police officer who investigated the accident should have been allowed to give a layperson opinion, and that the trial judge incorrectly responded to a question from the jury. We do not find any of the alleged errors rise to the level of reversible error, thus, the judgment of the trial court is affirmed.
 {¶ 2} On January 2, 2000, Appellant Dennis Haslam was driving a mini-van on Sykes Ridge Road in Monroe County. His wife Teresa and his two children were passengers in the vehicle at the time. Sykes Ridge Road is a rural, two lane highway with no markings on the road. There are also deep ditches on either side of the road.
 {¶ 3} At approximately 6:30 p.m., Mr. Haslam approached a rise in the road that prevented him from seeing any vehicles that might be coming from the opposite direction. At that same time, Appellee was approaching the hill in the opposite direction in a passenger car. Appellee was seventeen years old at the time. It was dark and both vehicles had their headlights on.
 {¶ 4} Both Appellee and Appellants saw headlights coming toward them as they approached the top of the hill. Appellee crested the hill first, and the two vehicles sideswiped each other as they passed. Both drivers claim to have swerved away from the center of the road to avoid being hit. Mr. Haslam drove his minivan over the top of the hill and pulled the vehicle into a nearby driveway to get it off the road.
 {¶ 5} Sergeant Garland Gibson of the Monroe County Sheriff's Department arrived a few minutes later to investigate the accident. He took statements from both drivers. He also measured tire tracks that were left in the berm of the road and ended where Appellants' minivan was parked. The tracks were 78 feet long, and extended in a straight continuous line along the berm of the road. (Trial Tr., p. 227.) There was no snow on the ground, but the berm was wet from previous snow. (Trial Tr., p. 229.)
 {¶ 6} On December 20, 2001, Appellants filed a personal injury negligence complaint against Appellee in the Monroe County Court of Common Pleas. Appellants alleged that they sustained bodily injuries, emotional pain and suffering, medical costs, and other damages due to the accident. A jury trial was set for January 13, 2003.
 {¶ 7} On January 6, 2003, Appellee filed a number of motions in limine, one seeking specifically to prevent Sgt. Gibson from giving any opinion about the cause of the accident, the point of impact, or the speed of the vehicles at the time of impact. Appellee did not believe that Sgt. Gibson had any special training in accident reconstruction to enable him to give such opinions. Appellants filed their own motion in limine attempting to prevent Appellee from introducing evidence that might violate the collateral source rule.
 {¶ 8} The court heard the motions on January 10, 2003, at the final pretrial conference. The judge agreed with Appellee that Sgt. Gibson could not give any opinions about the cause of the accident or point of impact. Appellee notified the court that she was prepared to call an expert witness, Mr. Jack Holland, to rebut any opinions that Sgt. Gibson might give. The judge informed the parties that Appellee would be permitted to call a rebuttal expert witness if Sgt. Gibson gave his opinions about the cause of the accident. Appellants' counsel questioned why this expert had not been previously disclosed. (Trial Tr., p. 33.) The court decided that Mr. Holland would be permitted to testify only if Sgt. Gibson gave his opinion about the cause of the accident. The court permitted Sgt. Gibson to testify as a fact witness concerning anything he observed at the accident scene. The court's in limine ruling as to Sgt. Gibson's testimony is as follows:
 {¶ 9} "The defendant's motion requesting this court to prohibit plaintiff from adducing any evidence from the investigating officer in this case regarding point of impact, cause of accident, estimation of speed, or any other opinion evidence is granted, unless and until plaintiff's counsel can establish and/or lay a proper foundation for said investigating officer's qualifications to render such opinions. If said foundation is laid, then the court shall revisit the issue of `expert testimony' outside the presence of the jury and before said opinions are attempted to be elicited by plaintiff's counsel." (1/13/03 J.E.)
 {¶ 10} A jury trial was held on January 13th and 14th, 2003. During voir dire of the jury panel, juror Theresa Tucker stated that she knew the parents of the passenger who was in Appellee's car at the time of the accident. (Trial Tr., p., 26.) Juror Tucker later stated that she knew Mr. Haslam's mother and father. (Trial Tr., p. 34.) Appellants' counsel did not follow up with any further questions for juror Tucker.
 {¶ 11} Sgt. Gibson was scheduled as one of Appellants' witnesses at trial. Prior to his taking the witness stand, the court held a brief hearing in chambers with the attorneys and with Sgt. Gibson to review the scope of Sgt. Gibson's testimony. The judge basically repeated what had been said at the final pretrial conference. Appellants' counsel did not object to the court's limitations placed on Sgt. Gibson's testimony. Appellants' counsel did not attempt to establish Sgt. Gibson as a person qualified to give an opinion about the cause of the accident or the point of impact. At trial, Sgt. Gibson only testified as to facts he observed at the accident scene.
 {¶ 12} While the jury deliberated, they delivered a written question to the judge, which asked: "[c]an we see a written report of the deputy[?]" There was a brief hearing concerning how the judge should answer. The judge responded with this written answer: "No. All relevant documents have already been provided to you to assist you in arriving at a verdict." (Jury Ques. 1.)
 {¶ 13} The jury returned a unanimous verdict in favor of Defendant-Appellee Theresa Russell.
 {¶ 14} Appellants' counsel presented an oral motion for a directed verdict, and a written motion for judgment notwithstanding the verdict or for a new trial. (Trial Tr., p. 434; 1/22/03 Motion.) These motions were overruled by the trial court. (Trial Tr. p. 435; 3/28/03 J.E.) On April 10, 2003, Appellants filed a timely appeal of the March 28, 2003, judgment entry.
 {¶ 15} The appeal presents three assignments of error and six issues for review.
 ASSIGNMENT OF ERROR NO. 1 {¶ 16} The first assignment of error states:
 {¶ 17} "The Trial Court erred in failing to grant the Plaintiff's Motion for directed verdict, and in failing to grant the plaintiff's motion for Judgment notwithstanding the verdict, or, alternatively, for a new trial."
 {¶ 18} In responding to a motion for a directed verdict or judgment notwithstanding the verdict, the nonmoving party is entitled to have all the evidence construed in his or her favor. Goodyear Tire RubberCo. v. Aetna Cas. Sur. Co. (2002), 95 Ohio St.3d 512, 514,769 N.E.2d 835; Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 137, 17 OBR 281, 477 N.E.2d 1145. The motion shall be denied unless reasonable minds can reach one conclusion. Posin v. A.B.C. Motor Court Hotel
(1976), 45 Ohio St.2d 271, 275, 344 N.E.2d 334. The question is a legal one dealing with the sufficiency of evidence needed to sustain a verdict. Goodyear, 95 Ohio St.3d at 514, 769 N.E.2d 835.
 {¶ 19} The standard of review of a trial court's denial of a motion for a new trial is abuse of discretion. Yungwirth v. McAvoy (1972),32 Ohio St.2d 285, 61 O.O.2d 504, 291 N.E.2d 739. Abuse of discretion connotes more than an error of law. It implies that the court was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 20} Appellants believe that the evidence in this case can only be interpreted in one way. They argue that the tire tracks made by their minivan unequivocally show that their van was far to the right of center at the point of impact. They also contend that statements made by Appellee amount to an admission that she was driving left of center at the time of impact.
 {¶ 21} Appellee disagrees with Appellants' assessment of the evidence. Appellee testified that her car was toward the right side of the road as she crested the hill, but not all the way to the right. (Trial Tr., p. 324.) She also testified that she was left of center as she approached the crest of the hill. (Trial Tr., p. 329.) She testified that she was in no particular hurry that night as she was driving to a church function. (Trial Tr., p. 323.) She said that she saw the headlights of Appellants' vehicle coming at the middle of her car, and that the minivan was driving down the middle of the road or even driving in the opposing lane. (Trial Tr., p. 325.) Appellee testified that she tried to avoid the accident by pulling further over to the right when she saw the headlights. (Trial Tr., p. 325.) She did not see Appellants' minivan take any evasive action to avoid the accident. (Trial Tr., p. 326.) Appellee contends that the jury could have inferred from her testimony that she was driving right of center at the time of the accident and that she took reasonable measures to try to avoid the accident.
 {¶ 22} Appellee is correct that her testimony indicates that she acted reasonably under the circumstances. The jury may simply have believed this testimony. Furthermore, Sgt. Gibson's testimony about the tire tracks does not completely support Appellants' version, as they insist. Sgt. Gibson testified that he saw tire tracks, "in the soft berm of the right-hand side of the road," that were 78 feet long and, "led right to the back end of [Appellants'] vehicle." (Trial Tr., pp. 227-228.) The tracks ended at the driveway where Mr. Haslam pulled off the road following the accident. Even assuming that the jury believed this testimony (which may not be the case), it does not prove, in and of itself, that Appellants' minivan was driving toward the right side of the road at the time of impact. The testimony also supports an interpretation that Mr. Haslam may have turned the vehicle to the right just after impact, and then proceeded to drive along the berm until he arrived at the nearest driveway.
 {¶ 23} Appellants' contention that Appellee could not have swerved to the right in a matter of two car lengths is sheer speculation and is not based on any evidence presented at trial.
 {¶ 24} The jury verdict in this case is supported by substantial, credible evidence and the trial court was correct in overruling Appellants' motions for a directed verdict, a judgment notwithstanding the verdict, and a new trial.
 ASSIGNMENT OF ERROR NO. 2 {¶ 25} Appellants' second assignment of error asserts:
 {¶ 26} "The trial court erred in failing to grant a new trial as a result of misconduct on the part of juror tucker."
 {¶ 27} Appellants claim that juror Theresa Tucker harbored strong ill will toward Dennis Haslam's parents, and by association, against Appellants. Appellants contend that juror Tucker hid this information from the court and from the attorneys during voir dire. Appellants' argument is contradicted by the record. There is no evidence of juror misconduct in this case.
 {¶ 28} The basis of Appellants' argument is contained in an affidavit of Richard Haslam, who is Appellant Dennis Haslam's father. (3/7/03 Memorandum, attachment.) Richard Haslam averred that in the mid-1990s he owned a piece of property located between juror Tucker's property and property owned by the Barnes family. Richard Haslam alleged that both the Tuckers and the Barnes family claimed ownership of property that actually belonged to him. He stated that the, "dispute was fraught with ill will between the Tuckers and the Barneses." Richard Haslam stated that he later sold the property to the Barnes. Appellants conclude from these statements that juror Tucker must have harbored ill will toward Appellants as relatives of Richard Haslam, and that this alleged ill will should have resulted in a new trial.
 {¶ 29} A trial court is permitted to rely on a juror's testimony in determining that juror's impartiality. State v. Herring (2002),94 Ohio St.3d 246, 259, 762 N.E.2d 940. A reviewing court generally defers to the trial judge in matters of juror misconduct, because the trial judge is in a better position to accurately evaluate the situation and determine the appropriate scope of inquiry. State v. Hessler (2000),90 Ohio St.3d 108, 115-116, 734 N.E.2d 1237. The trial court's decision is reviewed for an abuse of discretion, which signifies that the decision was, "unreasonable, arbitrary, or unconscionable." Id. at 116.
 {¶ 30} In addition, juror misconduct will not result in a new trial unless the misconduct has materially affected the substantial rights of the complaining party. State v. Kehn (1977), 50 Ohio St.2d 11, 19,361 N.E.2d 1330.
 {¶ 31} The jurors in this case were asked jointly if they were biased towards the defendant or plaintiff, and no juror responded. (Trial Tr., p. 11.) Juror Tucker later volunteered information that she knew the parents of a passenger in Appellee's car, and that she knew Mr. Haslam's parents. (Trial Tr., pp. 26, 34.) Juror Tucker testified that her acquaintance with Mr. Haslam's parent would not affect her ability to listen to the evidence as presented by both parties. (Trial Tr., p. 34.) Appellants' counsel did not ask another question about the nature of juror Tucker's relationship with Mr. Haslam's parents.
 {¶ 32} A party cannot claim reversible error in the court's refusal to dismiss a juror for cause if the party has not first exercised all its peremptory challenges. McGarry v. Horlacher (2002), 149 Ohio App.3d 33,39, 775 N.E.2d 865. Each party is entitled to three peremptory challenges. Civ.R. 47(B). Appellants' counsel only utilized two peremptory challenges, and has waived any error with regard to the court's failure to dismiss Juror Tucker for cause.
 {¶ 33} Further, Appellants' counsel did not attempt to uncover how close the relationship was between juror Tucker and Mr. Haslam's family. Appellants' counsel asked questions about the jurors' knowledge as to Defendant Russell, knowledge of the passenger in Russell's car, and even whether they knew members of Appellee's family. Appellants' counsel failed to ask whether the jurors were acquainted with Appellants' parents. Appellants' counsel did try, unsuccessfully, to have juror Tucker removed for cause because she was casually acquainted with a passenger in Appellee's car.
 {¶ 34} Furthermore, Richard Haslam's affidavit does not state that he knew of any ill will between the Tucker family and Appellants. Richard Haslam only stated that there was ill will between the Tucker and Barnes families. Richard Haslam's affidavit creates nothing more than an unsupported innuendo of bias. The lack of solid evidence of bias, tied with the fact that Appellants' counsel failed to properly question juror Tucker and failed to use all of his peremptory challenges, forces us to conclude that Appellants' second assignment of error is without merit.
 ASSIGNMENT OF ERROR NO. 3 {¶ 35} Appellants' third assignment of error states:
 {¶ 36} "The trial court erred in excluding sergeant Gibson's opinions and report, and in answering the question from the jury concerning his report."
 {¶ 37} This assignment of error presents four subissues. The first of these subissues addresses whether Sgt. Gibson could give an opinion as a lay witness.
 {¶ 38} Appellants first argue that Sgt. Gibson should have been permitted to give his opinion as a lay witness concerning the tire tracks he observed at the scene of the accident. Lay opinions are permitted by Evid.R. 701, which states:
 {¶ 39} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 40} Appellants contend that a police officer may give lay opinions. An example of this is found in State v. Jells (1990),53 Ohio St.3d 22, 559 N.E.2d 464, which held that:
 {¶ 41} "[A] lay witness may be permitted to express his or her opinion as to the similarity of footprints if it can be shown that his or her conclusions are based on measurements or peculiarities in the prints that are readily recognizable and within the capabilities of a lay witness to observe. This means that the print pattern is sufficiently large and distinct so that no detailed measurements, subtle analysis or scientific determination is needed. In such a situation, the pattern is simply identified as being similar to that customarily made by shoes. In essence, the testimony is `more in the nature of description by example than the expression of a conclusion.'" Id. at 29.
 {¶ 42} In Jells, an officer was permitted to give his opinion about the similarity between the defendant's shoe and a shoeprint taken from the window of a vehicle.
 {¶ 43} In Reed v. Jordan (July 31, 1995), Scioto App. No. 94CA2229, somewhat more related to the instant issue, involved an automobile striking a pedestrian. The Fourth District Court of Appeals held that a state trooper could give his lay opinion as to point of impact, based on the following factors: (1) the trooper had training in accident investigation; (2) the trooper had investigated several hundred accidents prior to the accident in question; and (3) the trooper did not rely upon scientific methodology to reach his conclusions, but instead relied upon his own observations and collection of data to reach his opinion.
 {¶ 44} Appellee presents a number of arguments in rebuttal. First, Appellants' counsel did not attempt to establish a foundation for Sgt. Gibson to give any type of opinion, whether as an expert or as a lay witness, even though the trial court never prevented Appellants from establishing this foundation. Appellee contends that Appellants did not object at trial to the judge's rulings in limine and waived any error as to those rulings.
 {¶ 45} Second, Appellee argues that police officers must establish their credentials for giving an opinion about the cause of an accident, even if the officer will only be testifying as a lay witness. Scott v.Yates (1994), 71 Ohio St.3d 219, 643, N.E.2d 105; Kish v. Withers
(1997), 123 Ohio App.3d 132, 136, 702 N.E.2d 825; Hatfield v. Andermatt
(1988), 54 Ohio App.3d 188, 191, 561 N.E.2d 1023. Obviously a jury may be easily misled when an authority figure such as a police officer gives opinions on the ultimate issues in the case under the guise of "lay opinion" testimony.
 {¶ 46} Third, Appellee distinguishes the Reed case relied upon by Appellants because in Reed the investigating officer had considerable training as an accident investigator. In the instant case, Sgt. Gibson had no training in accident investigation or accident reconstruction.
 {¶ 47} Error in the admission or exclusion of evidence is not grounds for reversal unless substantial rights of the complaining party were affected or it appears that substantial justice was not done.O'Brien v. Angley (1980), 63 Ohio St.2d 159, 164, 17 O.O.3d 98,407 N.E.2d 490. In determining whether a substantial right of the party has been affected, a reviewing court must decide whether the trier of fact would have probably reached the same conclusion had the error not occurred. Id. at 164-165.
 {¶ 48} Appellants have misstated the trial court's ruling in limine concerning Sgt. Gibson's proposed testimony. The court actually ruled as follows:
 {¶ 49} "6. The defendant's motion requesting this court to prohibit plaintiff from adducing any evidence from the investigating officer in this case regarding point of impact, cause of accident, estimation of speed, or any other opinion evidence is granted, unless and until plaintiff's counsel can establish and/or lay a proper foundation for said investigating officer's qualifications to render such opinions. If said foundation is laid, then the court shall revisit the issue of `expert testimony' outside the presence of the jury and before said opinions are attempted to be elicited by plaintiff's counsel." (1/13/03 J.E., p. 2.)
 {¶ 50} The court did not prevent Appellants from establishing Sgt. Gibson as a person qualified to give an opinion about the cause of the accident and the point of impact. To the contrary, the court gave Appellants a clear indication as to what they needed to do in order to get such testimony admitted. Appellants failed to use the opportunity given to them by the court, and consequently, Sgt. Gibson was qualified only to testify as a fact witness.
 {¶ 51} The established rule in Ohio is that the grant or denial of a motion in limine is not a ruling on the evidence. State v. Grubb
(1986), 28 Ohio St.3d 199, 200-201, 28 OBR 285, 503 N.E.2d 142. Rather, it is a preliminary ruling, requiring the parties to raise specific evidentiary objections at trial in order to permit the court to consider the admissibility of the evidence in its actual context. Id. at 202. Therefore, failure to object to the evidence at trial waives the right of the objecting party to raise the court's ruling on the preliminary motion as error on appeal. Id. at 203.
 {¶ 52} It is readily apparent from the trial court's judgment entry that its ruling concerning Sgt. Gibson was interlocutory and could be revisited at trial. Appellants' attorney was again given a chance to raise objections during a meeting in the judge's chambers just before Sgt. Gibson was scheduled to testify. (Trial Tr., pp. 218 ff.) When Sgt. Gibson took the stand to testify, Appellants' attorney asked only a few questions and never attempted to qualify him as a lay witness or an expert witness. (Trial Tr., pp. 225-228.) Appellants' attorney never raised any objections concerning Sgt. Gibson's testimony or the court's prior rulings. Therefore, any errors in the trial court's interlocutory rulings, if they exist, have been waived.
 {¶ 53} Furthermore, the type of testimony that Appellants were seeking from Sgt. Gibson was not as simple as that of matching a shoeprint to the tread on a shoe. Appellants wanted Sgt. Gibson to give his opinion that Appellee's vehicle was left of center when it struck Appellants' vehicle. (1/10/03 Tr., p. 28.) Sgt. Gibson was expected to give this opinion primarily based on tire tracks found at the scene of the accident. (1/10/03 Tr., p. 28.) The major and obvious question here is whether the tracks started before, during, or after the moment of impact. Appellants never presented any evidence that Sgt. Gibson had even basic training or experience with traffic accidents or interpreting tire tracks. The judge told Appellants that they could present evidence about Sgt. Gibson's qualifications and that the judge would adjust his ruling as needed. (1/10/03 Tr., p. 31.) Appellants never presented any evidence of Sgt. Gibson's qualifications. Appellants' counsel was apparently satisfied with the court's rulings, and never raised the issue at trial as a problem.
 {¶ 54} The facts of the instant case are quite different than those in Reed, supra, which was cited by Appellants. In Reed, it was established at trial that the officer was trained in accident investigation, and had been part of hundreds of accident investigations. In the instant case, Sgt. Gibson met with the trial judge and the attorneys in chambers and told the judge that he had no special training:
 {¶ 55} "[The Court]: Have you had any specialized training, have you gone to any schools or anything like this on accident investigation?
 {¶ 56} "Sergeant Gibson: No, no specialized training." (Trial Tr., p. 218.)
 {¶ 57} Based on Appellants' waiver of this issue, and because Sgt. Gibson had no training in accident reconstruction, the trial court was correct in limiting his testimony to those facts he observed at the accident scene.
 {¶ 58} The second subissue presented here is whether Appellee was entitled to present a rebuttal expert witness.
 {¶ 59} Appellants take issue with the trial court's decision to allow Appellee to present a previously undisclosed rebuttal expert witness. The trial court stated to the parties that Appellee's expert was, "not going to be able to be called unless your deputy (Sgt. Gibson) suddenly becomes an expert because right now * * * he was brought in as a fact witness and not as an expert witness. If all of a sudden he becomes an expert witness, I'm going to give the defense an opportunity to call their own expert." (1/10/03 Tr., pp. 33-34.) Appellants believe that Appellee was required to declare this expert witness prior to trial according to Civ.R. 26(B)(4).
 {¶ 60} Appellee argues that she did reveal her potential rebuttal expert at the earliest possible moment, in response to Appellants' requests to have Sgt. Gibson testify as an expert.
 {¶ 61} Admissibility of expert testimony lies within the discretion of the trial court. Sindel v. Toledo Edison Co. (1993), 87 Ohio App.3d 525,622 N.E.2d 706. A trial court has broad discretion in discovery matters, and absent an abuse of that discretion a reviewing court should not reverse the trial court in these matters. Vinci v. Ceraolo (1992),79 Ohio App.3d 640, 607 N.E.2d 1079.
 {¶ 62} Civ.R. 26 governs many aspects of the discovery process, including discovery of the names of expert witnesses. Civ.R. 26(B) states in part:
 {¶ 63} "(B) Scope of discovery
 {¶ 64} "Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:
 {¶ 65} "* * *
 {¶ 66} "(4) Trial preparation: experts.
 {¶ 67} "(a) Subject to the provisions of subdivision (B)(4)(b) of this rule and Rule 35(B), a party may discover facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or preparation for trial only upon a showing that the party seeking discovery is unable without undue hardship to obtain facts and opinions on the same subject by other means or upon a showing of other exceptional circumstances indicating that denial of discovery would cause manifest injustice.
 {¶ 68} "(b) As an alternative or in addition to obtaining discovery under subdivision (B)(4)(a) of this rule, a party by means ofinterrogatories may require any other party (i) to identify each personwhom the other party expects to call as an expert witness at trial, and(ii) to state the subject matter on which the expert is expected totestify. Thereafter, any party may discover from the expert or the other party facts known or opinions held by the expert which are relevant to the stated subject matter. Discovery of the expert's opinions and the grounds therefor is restricted to those previously given to the other party or those to be given on direct examination at trial." (Emphasis added.)
 {¶ 69} The record reflects here that Appellee did not expect to call any expert witnesses at trial. Therefore, she was not required by Civ.R. 26(B)(4)(b) to disclose any expert witness. It was only after Appellants revealed that they might attempt to qualify Sgt. Gibson as an expert that Appellee requested permission to call a rebuttal expert. (1/10/02 Tr., pp. 30-31.)
 {¶ 70} In Jones v. Murphy (1984), 12 Ohio St.3d 84, 86, 12 OBR 73, 465 N.E.2d 444, The Ohio Supreme Court stated that:
 {¶ 71} "One of the purposes of the Rules of Civil Procedure is to eliminate surprise. This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries. * * *"
 {¶ 72} In the instant case, it appears that Appellants were the parties who failed to disclose that Sgt. Gibson was a potential expert witness. Prior to the January 10, 2002, motion hearing, Appellants had only identified Sgt. Gibson as a fact witness. In this situation, the trial court adhered to the purpose of the Rules of Civil Procedure by attempting to eliminate the unfair advantage arising from Appellants' last-minute request to use Sgt. Gibson as an expert witness. See EarlEvans Chevrolet, Inc. v. Gen. Motors Corp. (1991), 74 Ohio App.3d 266,282, 598 N.E.2d 1187.
 {¶ 73} The third subissue addresses whether Sgt. Gibson's police report was admissible.
 {¶ 74} Appellants argue that the trial court improperly excluded Sgt. Gibson's police report from being admitted into evidence. There is nothing in the record indicating that this occurred. Even if we assume that the trial court excluded the report during a part of the January 10, 2003, hearing held off the record, it was incumbent upon Appellants' counsel to attempt to proffer the police report as evidence at trial and to properly object at that time if the trial court excluded such evidence. Grubb, supra, 28 Ohio St.3d at 200, 28 OBR 285, 503 N.E.2d 142. As far as we can tell from the record, Appellants did not try to introduce any police report at trial. Thus, the alleged error is waived. The report does not appear anywhere in the record, and therefore, we cannot evaluate whether it was properly excluded.
 {¶ 75} The last subissue involves whether the trial court erred in responding to a jury question.
 {¶ 76} Appellants contend that the trial court should not have told the jury that Sgt. Gibson's police report was irrelevant. During deliberations, the jury submitted the following question to the judge: "[c]an we see a written report of the deputy." The judge responded: "No. All relevant documents have already been provided to you to assist you in arriving at a verdict." (Jury Ques. 1.)
 {¶ 77} Appellants' counsel argued at trial that the judge should simply have answered "no" to the jury question, because the judge never made any ruling on the relevancy of the police report. (Trial Tr., pp. 436-437.)
 {¶ 78} Appellants contend that the court's answer trivialized Sgt. Gibson's testimony by way of association. In other words, if Sgt. Gibson's report was irrelevant, how could Sgt. Gibson's testimony — which supposedly revealed the same information contained in the report — be relevant?
 {¶ 79} Appellee argues that Appellants are simply speculating about how the jury might have interpreted the trial court's answer to their question. Appellee argues that the trial court gave the jury an accurate answer because the police report was not part of the evidence.
 {¶ 80} Neither party cites any law governing how a trial court should answer written questions from the jury. Generally, the trial judge is required to explain to the jury all the law that is necessary for them to make their deliberations. "A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." Marshall v. Gibson (1985),19 Ohio St.3d 10, 12, 482 N.E.2d 583. "It is thus clear that an incomplete charge will constitute grounds for reversal of a judgment where the charge as given misleads the jury. A caveat expressed by this court long ago is still relevant today: A charge ought not only be correct, but it should also be adapted to the case and so explicit as not to be misunderstood or misconstrued by the jury." Id.
 {¶ 81} Jury instructions are within the trial court's discretion, and we will not disturb the decision absent an abuse of discretion. Statev. Guster (1981), 66 Ohio St.2d 266, 271, 20 O.O.3d 249, 421 N.E.2d 157. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Jury instructions are not reviewed in isolation, though, and we must consider the specific charge at issue in the context of the entire charge. Sech v. Rogers
(1983), 6 Ohio St.3d 462, 464, 6 OBR 515, 453 N.E.2d 705. We will only find reversible error where a jury instruction has, in effect, mislead the jury. Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307,312, 649 N.E.2d 1219.
 {¶ 82} It is not clear that the trial court's response to the jury question was in error. Appellants are technically correct that the trial court never ruled on the relevance of Sgt. Gibson's report because there was no attempt to have it entered into evidence. In short, if the report was never "evidence," it could certainly never be "relevant evidence." Evid.R. 401 defines relevant evidence as follows:
 {¶ 83} "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 84} Obviously, a police report about an accident will deal with matters that are relevant to the accident, even if only to confirm whether or not an accident actually occurred.
 {¶ 85} On the other hand, it is not the trial judge's responsibility to explain every nuance of every legal term to the jury. The judge only needs to explain as much of the law as is needed for the jury to complete their deliberations. Apparently, Appellants did not consider the police report relevant enough to attempt to have it admitted as evidence. The trial judge correctly explained to the jury that they were only to, "consider such evidence as the court admits and give it such weight and credibility as you think proper." (Trial Tr., p. 414.) When the trial court later responded to the jury question by stating that, "[a]ll relevant documents have already been provided to you", the court was essentially repeating what it had already told the jury.
 {¶ 86} The trial judge could have answered the jurors' question without using the word "relevant," which is a legal term of art. He could have simply said that the report was not offered as evidence, that the jurors had all the admissible evidence that was available to them, or that the jurors were only permitted to consider the evidence presented at trial. It is possible Appellants raise a valid point when they argue that the trial judge may have actually caused the jury to speculate about meaning and content of the police report and that the jury may have implied that it was not relevant. Of course, this may have caused the jury to speculate about the relevance or importance of Sgt. Gibson's testimony. It is certainly possible to speculate as to the impact of the wording in question.
 {¶ 87} Even if we assume, however, that the trial court's response to the juror question was in error, it is unlikely that it had any bearing on the outcome of this case. Sgt. Gibson did not observe the accident, and was not qualified as an expert witness. Sgt. Gibson's testimony did not address the crucial questions of this case, issues of causation and fault. It was the credibility of the parties themselves that determined this outcome of this case. As a result, we cannot view Appellants' speculative argument surrounding the trial court's response to the jury question as an abuse of discretion.
 {¶ 88} Because we must reject all of Appellants' arguments, the jury verdict and the trial court's judgment are affirmed, as well as the trial court's judgment entry overruling Appellants' motions for a judgment notwithstanding the verdict and for a new trial.
Vukovich and DeGenaro, JJ., concur.